(No. 12729.—Decree affirmed.)
ELLEN BARNES, Appellee, *vs*. HUGH GULLIFORD, Appellant.

*Opinion filed October 27, 1919.*

SPECIFIC PERFORMANCE—*fact that the vendee obtained money for payments by the illegal sale of liquor is no defense.* One who has agreed to convey property to another upon the making of certain payments cannot avoid his agreement upon the ground that the vendee obtained the money for her payments by the illegal sale of intoxicating liquor, when the agreement was not based in any way upon the nature of the vendee's business.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

RAYBURN & BUCK, for appellant.

JESSE E. HOFFMAN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of McLean county granting the relief prayed in a bill in chancery by the complainant, who is the appellee here.

The circumstances out of which this litigation arose are substantially as follows: Appellee, Mrs. Ellen Barnes, had been conducting a hotel or rooming house in Bloomington, called the Manor Hotel, for some years. She at one time owned the property, but she mortgaged it to secure a note for $5000, which mortgage was foreclosed and the property sold to the mortgagor, and not having been redeemed the purchaser received a deed. Appellee continued to occupy the property as a tenant of the owner and pay the rent. Some time in the spring of 1917 she was informed the owner was about to sell the property to another party. The owner required a cash payment of $2000 and would give time for the payment of the balance. Mrs. Barnes conferred with the attorney for the owner of the property, who is also her attorney in this litigation, and he conducted

the negotiations between the parties leading to the sale of
the property. Mrs. Barnes could only raise $1500 to make
the cash payment. Some time previous to the consumma-
tion of the purchase, (the exact time is disputed,) a woman
known variously as May Gulliford, Mrs. Weinberger and
"Snapp" came to Mrs. Barnes' house from Chicago. She
appears to have made frequent trips to other places and
would return to Mrs. Barnes.' One time she was in a hos-
pital and was taken from that place back to Mrs. Barnes'.
When Mrs. Barnes told the woman (to whom we shall re-
fer as May Gulliford) of her desire to purchase the prop-
erty, the terms of the purchase and her inability to pay
more than $1500, May Gulliford interested herself in the
matter and brought about a meeting between Mrs. Barnes
and her father, the appellant, who was temporarily in
Bloomington, for the purpose of procuring his aid in se-
curing the additional $500 to make the $2000 payment.
He agreed to undertake to do so and in the course of a
few days reported he could raise and advance the $500.
Appellant and appellee, Mrs. Barnes, then went to the attor-
ney for the owner of the property and he prepared a memo-
randum of an agreement, which recited that the owner of
the property was willing to sell it to Mrs. Barnes at the
special price of $6500; that Mrs. Barnes was unable to
finance the proposition; that appellant was willing to assist
her; that she and May Gulliford were each to share in
the benefit or ownership of said property in proportion to
the amount of money furnished by each of said benefici-
aries; that Mrs. Barnes and May Gulliford were to furnish
$1500 in cash and the appellant was to furnish $370.63
and place a mortgage for $5000 on the premises, taking
a deed to the property to himself; that on or before six
months after the date of the agreement Mrs. Barnes and
May Gulliford were to re-pay to appellant $370.63, with
interest at six per cent; that they were to pay the interest
on the mortgage, and on or before one year from its date

to pay at least $500 on said mortgage and all interest thereon, taxes and special assessments, and on or before eighteen months pay another $500 and all interest on said mortgage debt, and upon said payments being made appellant agreed to convey the property to Mrs. Barnes and May Gulliford, subject to the unpaid balance of the mortgage. That instrument was dated May 28, 1917. Appellant made arrangements with the Corn Belt Bank of Bloomington by which the bank agreed to take his note for $5000, secured by a first mortgage on the property. The bank would not take the note and mortgage of Mrs. Barnes. It was therefore arranged that the owner of the property should be paid cash for it,—$6500. He agreed to, and did, convey the property to appellant. Of the purchase price $5000 was procured, by appellant's note and mortgage, from the Corn Belt Bank. The taxes and special assessments on the property were paid, also the interest and two $500 payments on the principal of the mortgage note and the amount advanced by the appellant, as agreed in the written instrument, and Mrs. Barnes requested appellant to make her a deed pursuant to said agreement. The appellant declined to do this, but averred he agreed to convey her an undivided one-half interest, which Mrs. Barnes refused to accept.

The answer to the bill filed to compel the conveyance to the complainant alleges that May Gulliford was in partnership with Mrs. Barnes in the hotel and the business there conducted, and that half of the money paid on the property by Mrs. Barnes was the money of May Gulliford. On the 20th of February, 1918, May Gulliford executed an assignment of all her interest to appellant, her father, and both she and her father denied Mrs. Barnes was entitled to the relief prayed in her bill. The cause was referred to the master in chancery, who heard the evidence and reported that May Gulliford had no financial interest in the property by virtue of the agreement; that she had paid no money on the property; that the allegations of complain-

ant's bill were true and that she was entitled to the relief prayed. The court overruled exceptions to the master's report and entered a decree that the payments that had been made were made by Mrs. Barnes; that none of the money paid was furnished by May Gulliford; that she was not a partner in the business with Mrs. Barnes; that the bulk of the receipts from the business came from the illegal sale of intoxicating liquors, and that a court of equity would not lend its aid to an accounting of the profits but would leave the parties in the position they had placed themselves. The decree directed the conveyance of the property by the appellant to Mrs. Barnes as prayed in her bill.

Without entering into detail as to the character and conduct of May Gulliford as shown by the testimony, and the basis of her claim to an interest in the business conducted at the hotel, it is sufficient to say the proof warranted the conclusions of the master and the decree of the chancellor. Appellant admitted he had been paid back all of the money he put in the deal for the property and that the only claim he had in it was by virtue of the assignment from his daughter, May Gulliford. All of the money that had been paid on the property was paid by Mrs. Barnes according to the proof, and if it was in part obtained by her from illegal sales of intoxicating liquors it would not authorize May Gulliford or her assignee to have and retain an interest in the property under the terms of the agreement of May 28, 1917. A very reasonable explanation is given by the testimony for Mrs. Barnes how the name of May Gulliford came to be in the agreement, but however that may be, she and Mrs. Barnes were to share in the property in proportion to the amount of money furnished by each of them. If May Gulliford furnished no money she was not entitled to share in the property. Aside from the question whether the proof showed May Gulliford was in partnership with Mrs. Barnes and that she furnished part of the money paid on the property, appellant's argument is de-

voted to the proposition that by the terms of the written agreement and the nature of the business out of which the money was made to pay on the property Mrs. Barnes is now estopped to assert her right to the property and to procure the relief prayed for in her bill. We think this a misapprehension of the doctrine of estoppel. The agreement in relation to the purchase of the property had nothing to do with the conduct of the business carried on upon the premises. If, as we believe, the record shows Mrs. Barnes furnished all of the money to make the payments on the property as required by the agreement, appellant cannot avoid the performance of his part of the agreement on the ground that she obtained the money from the unlawful sale of intoxicating liquors.

The decree was in accordance with the law and evidence and is affirmed.

*Decree affirmed.*